IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


JEREMY S. CHRISTIANS                                              PLAINTIFF

     v.                              CIVIL NO. 5:19-CV-5179

ANDREW M. SAUL,[1] Commissioner,
Social Security Administration                              DEFENDANT


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Jeremy s. Christians, brings this action pursuant to 42 U.S.C. § 405(g),
seeking judicial review of a decision of the Commissioner of the Social Security
Administration (Commissioner) denying his claim for supplemental security income (SSI)
under the provisions of Title XVI of the Social Security Act (Act). In this judicial review, the
Court must determine whether there is substantial evidence in the administrative record to
support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff protectively filed an application for SSI on October 25, 2016, alleging an
inability to work since September 4, 2010, due to the following: degenerative disc disease in
neck; left leg and hip injury, pain and issues; neck pain and/or pinched nerve; nerve pain; left
arm numbness; migraines; chronic pain; surgery for rod in leg; post-traumatic stress disorder
(PTSD); anxiety; and depression. (Tr. 54-55, 72-73). An administrative hearing was held on

---

[1] Andrew M. Saul has been appointed to serve as Commissioner of Social Security and is substituted as Defendant, pursuant
to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

May 15, 2018. (Tr. 38-63).  Plaintiff was present and testified.  (Tr. 42-62).  A vocational

expert (VE) also testified.  (Tr. 58-63).

In a written opinion dated December 17, 2018, the ALJ found that Plaintiff had the

following severe impairments: degenerative disc disease (degenerative disorder of the back –

discogenic and degenerative) and depressive disorder.  (Tr. 17).  However, after reviewing the

evidence in its entirety, the ALJ determined that the Plaintiff's impairments did not meet or

equal the level of severity of any listed impairments described in Appendix 1 of the Regulations

(20 CFR, Subpart P, Appendix 1). (Tr. 17-19). The ALJ found Plaintiff retained the residual

functional capacity (RFC) to perform light work as defined in 20 C.F.R. 416.967(b), except

the Plaintiff could climb ramps and stairs occasionally; climb ladders, ropes, and scaffolds

occasionally; and balance, stoop, kneel, crouch, and crawl occasionally.  In addition, Plaintiff

was limited to work where interpersonal contact was incidental to the work performed; the

complexity of tasks was learned and performed by rote with few variables and little judgment;

and the supervision required was simple, direct, and concrete. (Tr. 19-27).  With the help of

the VE, the ALJ determined that Plaintiff was unable to perform his past relevant work as a

poultry farm laborer, forklift operator, and frontend loader driver.  (Tr. 27). Considering

Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs

that existed in significant numbers in the national economy that Plaintiff could perform, such

as a can filling closing machine tender, a power screw driver operator, and a compression

molding machine tender.  (Tr. 28).  Ultimately, the ALJ concluded that Plaintiff had not been

under a disability within the meaning of the Social Security Act since October 25, 2016, the

date the application was filed.  (Tr. 28).

Subsequently, Plaintiff requested a review of the hearing decision by the Appeals Council, which denied that request on July 25, 2019.  (Tr. 1-6).  Plaintiff filed a Petition for Judicial Review of the matter on September 19, 2019.  (Doc. 2).  Both parties have submitted briefs, and this case is before the undersigned for report and recommendation.  (Docs. 12, 13).

The Court has reviewed the transcript in its entirety.  The complete set of facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

## II.    Evidence Submitted:

At the May 15, 2018, hearing before the ALJ, Plaintiff testified that he was born in 1971; that he was a high school graduate; and that he had completed two years of college courses.  (Tr. 42). Testimony also showed that Plaintiff's past work consisted of a poultry farm laborer, a forklift operator, and a frontend loader. (Tr. 48-51, 59).

Prior to the relevant time period, Plaintiff was treated for hip and femur injuries sustained in an incident while in jail; chronic pain in the left hip; neck and chest pain; chronic left leg pain; osteoarthritis in pelvic region and thigh; an episode of syncope; insomnia; PTSD; anxiety; depression; treatment for symptoms of suicidal ideation; and a period of inpatient treatment for onset of alcohol-induced mood disorder during intoxication. Plaintiff was also treated for cervical radiculopathy with injections and physical therapy.[2]

On November 9, 2016, Plaintiff saw Dr. Regina Thurman for a follow up on his hip and leg pain. Plaintiff reported that his medication was currently working well but that his insurance had become inactive.  As a result, he did not have a primary care physician and had

---

[2] The Court notes that records indicate Plaintiff was discharged from therapy due to non-compliance with visits and for not returning to the clinic within the previous thirty days.

trouble getting in to see Dr. Thurman. Plaintiff also reported that he fell off a ladder recently and suffered bruising from the fall. He reported that his medications allowed him to perform his activities of daily living. (Tr. 396). Plaintiff's gait was abnormal, and he was unable to stand without difficulty. (Tr. 398). He was assessed with chronic pain, hip pain, and osteoarthritis of the pelvic region and thigh. (Tr. 398).

On November 14, 2016, Plaintiff saw Chelsie Harper, LMSW, at Ozark Guidance Center for a ninety-day review. (Tr. 450). Notes indicate Plaintiff had shown some improvement and progress toward his goal through individual therapy. (Tr. 453). Ms. Harper indicated that Plaintiff was, at the most, moderately incapacitated by anxiety, activities of daily living, physical condition, and job performance problems. (Tr. 456).

On November 22, 2016, Plaintiff saw Dr. Ester Salvador at Ozark Guidance Center. (Tr. 458). Plaintiff reported a history of depression; the loss of his wife after she had an affair; and that he was filing for disability after his leg injury and neck pain. Plaintiff reported feelings of hopelessness, trouble sleeping, poor appetite, poor self-esteem, and feelings of restlessness. Plaintiff stated that the past week was really challenging for him and that life was dragging him down. Plaintiff reported missed therapy sessions due to transportation issues. (Tr. 458). Plaintiff's history included having been previously discharged from therapy for missing sessions; having been under a no-contact order, which he violated and served four months jail time; having violated the order a second time, but without jail time; and having become suicidal after the second incident of violating the no-contact order. Plaintiff reported depression of 7/10 that day, activity of 5/10 and irritability and anger at a 3/10. (Tr. 459). Plaintiff's psychiatric examination showed the following: casually groomed in appearance, thin build, cooperative behavior, average eye contact, clear speech, logical thoughts, full affect, depressed and anxious

mood, oriented to person, place, time, and circumstance, attentive to evaluation, impaired judgment and insight, normal gait, and fair strength. (Tr. 462). Plaintiff was diagnosed with major depressive disorder and generalized anxiety disorder. (Tr. 462). Plaintiff's irritability and anger were improved and were not present that day. Dr. Salvador instructed Plaintiff to continue his medication, attend counseling, and eat a healthy diet. She noted that Plaintiff's depression, anxiety, irritability, and anger were in remission. (Tr. 463).

On November 28, 2016, Plaintiff returned to see Ms. Harper at Ozark Guidance Center for individual therapy. (Tr. 698). Therapy notes indicate Plaintiff had continued to show stability and increased insight into how his poor relationship boundaries and unhealthy dynamics had negatively impacted him. His prognosis was good. (Tr. 699).

On December 8, 2016, Plaintiff returned for another therapy session with Ms. Harper. Ms. Harper noted that Plaintiff continued to show stability during the session; that he finished his mandatory domestic violence classes; and that he continued to learn and grow. His prognosis continued to be good. (Tr. 702).

On January 6, 2017, Plaintiff visited physician assistant Lindsey Smallridge at NWAMC Orthopedics for a consultation for his hip pain. (Tr. 810). Plaintiff reported pain since his injury but also stated that his pain was better than it had been the last few months. He struggled to stay in one position too long and felt that the "bolt" inside his hip was very tender to touch. (Tr. 810). Plaintiff's physical examination showed that he was not in any acute distress; that his incision had healed well with no sign of infection; that he had good lower extremity strength with manual testing; and decent range of motion at the hip. (Tr. 811). An x-ray of Plaintiff's hip showed his hip hardware to be intact and no sign of arthritis in the hip

joint. (Tr. 812). Dr. Smallridge explained that Plaintiff's "hip joint itself looked quite good so he would not be a surgical candidate for hip replacement" at the time. His only surgical option would be hardware removal; however, there would be no guarantees of his limitations or pain level without the hardware. (Tr. 812). Notes indicate that Plaintiff did not want to proceed with surgery to remove the hardware. (Tr. 814).

On January 9, 2017, Plaintiff attended therapy with Allyson Smolinski, LMSW, also at Ozark Guidance Center. Plaintiff discussed his background, past trauma, and depressive symptoms. He also reported that he felt he had made significant progress with Ms. Harper. (Tr. 705).

On February 2, 2017, Plaintiff saw Dr. Thurman for a follow up on his left hip and left leg pain. (Tr. 670). Notes confirmed that orthopedics did not recommend surgery. Plaintiff's medications were working well overall, and they allowed him to perform his activities of daily living. Plaintiff was taking ibuprofen, Percocet, and tramadol. Plaintiff reported having no side effects from his mediation and that he was pleased with the regimen overall. (Tr. 670). Plaintiff's physical examination showed some decrease in range of motion in Plaintiff's left extremities and an abnormal gait with difficulty standing. (Tr. 672). He was assessed with chronic pain, hip pain, osteoarthritis of the pelvic region and thigh. (Tr. 672). Smoking cessation counseling was ordered. (Tr. 672).

On February 15, 2017, Dr. Abesie Kelly, Ph.D, a non-examining medical consultant, completed a Psychiatric Review Technique and a Mental RFC Assessment, where she found that Plaintiff had the capacity to perform work where interpersonal contact was incidental to work performed, e.g. assembly work; complexity of tasks was learned and performed by rote,

few variables, little judgment; and supervision required was simple, direct, and concrete. (Tr. 70, 75).

On February 16, 2017, Plaintiff returned to see Dr. Salvador. Plaintiff reported that his depression was a 4/10 that day, his anxiety was at a 3/10, and his irritability and anger was a 1-2/10. (Tr. 708). Plaintiff's psychiatric examination showed a casually groomed appearance; a thin build; cooperative behavior; clear speech; logical thoughts; full affect; depressed mood; orientation to person, place, and time; attentive to evaluation; impaired judgment; impaired insight; fair strength; and a normal but limited gait causing a slight limp due to the hardware in his leg. (Tr. 711). Dr. Salvador opined that Plaintiff had improvement in his mood but that he was still drinking alcohol and had high liver enzymes. (Tr. 711).

On February 21, 2017, Plaintiff saw Sean Millhouse, LPC, for an MTP (standard, thirty-day) review for his major depressive disorder and generalized anxiety disorder treatment. (Tr. 714). Mr. Millhouse noted that Plaintiff had been compliant with medication and appointments during the review period. (Tr. 718). Plaintiff was also agreeable to the current treatment plan. (Tr. 719).

On March 2, 2017, Plaintiff saw Erica Olson, LAC, for individual counseling. (Tr. 723). Ms. Olson described Plaintiff's mood as euthymic, his affect as full, and his behavior as cooperative. (Tr. 724). Plaintiff's prognosis was good. (Tr. 725).

On March 6, 2017, Plaintiff had an x-ray of his left hip which showed postsurgical and posttraumatic deformity of the left femoral neck, and heterotopic ossification along the medial aspect of the healed femur fracture site may be resulting in impingement upon adjacent

musculature. (Tr. 727). An x-ray of Plaintiff's left knee showed no acute abnormality and no significant degenerative changes of the left knee. (Tr. 728).

On March 9, 2017, Dr. Charles Friedman, a non-examining medical consultant, completed a Physical RFC Assessment, wherein he determined that Plaintiff was capable of light work with occasional postural limitations. (Tr. 73).

On March 30, 2017, Dr. Salvador authored a letter stating that she was Plaintiff's treating psychiatrist at Ozark Guidance Center and that Plaintiff had been under her care since November 24, 2015. (Tr. 1133). She stated that Plaintiff received psychiatric services, medication management and counseling on a routine basis. Plaintiff was diagnosed with major depressive disorder and generalized anxiety disorder. Dr. Salvador stated that she was familiar with Plaintiff's history and disability-related functional limitations, and she opined that Plaintiff continued to struggle with suicidal ideation and panic attacks. (Tr. 1133).

On May 1, 2017, Plaintiff retuned to Dr. Thurman for pain management. Plaintiff reported he was doing well, and he reported light work. Plaintiff stated that his medications (ibuprofen, Percocet and tramadol) were working for his pain and kept him functioning. Plaintiff denied side effects. (Tr. 740). Plaintiff's physical examination showed an abnormal gait and that Plaintiff was unable to stand without difficulty. (Tr. 742). Plaintiff was assessed with chronic pain, hip pain, osteoarthrosis in the pelvic region and thigh, and opioid dependence. (Tr. 742).

On May 12, 2017, Dr. Diane Kogut, Ph.D., a non-examining medical consultant, completed a Psychiatric Review Technique and a Mental RFC Assessment, wherein she affirmed Dr. Kelly's opinion finding that Plaintiff was capable of performing work where

interpersonal contact was incidental to work performed, e.g. assembly work; complexity of tasks was learned and performed by rote, few variables, little judgment; and supervision required was simple, direct, and concrete.  (Tr. 89, 95).

On May 25, 2017, Dr. Rita Allbright, a non-examining medical consultant, completed a Physical RFC Assessment, wherein she affirmed Dr. Friedman's opinion of light work with occasional postural limitations. (Tr. 92).

On June 8, 2017, Plaintiff had an MTP review at Ozark Guidance Center. Clinic notes reveal Plaintiff had attended only one individual therapy session and no medication management appointments in the previous ninety days.  (Tr. 760).

On July 10, 2017, Plaintiff visited Northwest Medical Center emergency department with complaints of chest pain and bilateral arm pain and numbness. (Tr. 1021). Plaintiff reported that his primary care physician was no longer in the area, that he was searching for a new doctor, and that he had run out of his medication in the meantime. (Tr. 1022). Plaintiff reported that he was moving out of his apartment and had been "doing a lot of heavy lifting." (Tr. 1022). Plaintiff's chest x-ray was normal. (Tr. 1025). Plaintiff was diagnosed with arm pain, chronic neck pain, and chest pain, and he was discharged home the same day. (Tr. 1025).

On July 14, 2017, Plaintiff underwent therapy for his depressive disorder and generalized anxiety disorder. (Tr. 764). Plaintiff reported that he was having to relocate because the police had recently been to Plaintiff's home to arrest him, which was not allowed by his landlord.  While in jail, Plaintiff was not allowed to have some of his medication, so he was experiencing withdrawals. Plaintiff was encouraged to meet with a doctor or nurse since he missed his last medication appointment.  (Tr. 765).

On July 27, 2017, Plaintiff visited the Northwest Medical Center Emergency Department for left hip pain secondary to running, wrist pain from handcuffs, and a dog bite to his right arm. (Tr. 1001). Plaintiff was in police custody after being arrested for domestic abuse/disturbance.  When police arrived, Plaintiff began to run and a police dog was used to control Plaintiff; however, hospital records indicate there was no dog bite present. (Tr. 1001). Records indicate Plaintiff was a smoker. (Tr. 1003). An x-ray showed no acute abnormality, and Plaintiff was diagnosed with muscle strain of the left hip. (Tr. 1004, 1016).

An August 8, 2017, note from Dr. Thurman's office showed that Plaintiff missed his appointment after being pulled over on his way to see Dr. Thurman and arrested on outstanding warrants. (Tr. 837).

On August 29, 2017, Plaintiff underwent a ninety-day review at Ozark Guidance with Ms. Olson. (Tr. 767). Notes indicate that during the review period, Plaintiff had attended one therapy session during the review period and had not gone to see a doctor or nurse for medication management as recommended. (Tr. 770). Ms. Olson noted that Plaintiff still needed to work on his long-term goals and had not been compliant with taking his medication as prescribed. (Tr. 770).

On September 11, 2017, Plaintiff saw Dr. Thurman for a follow up on his chronic pain in the left hip. Plaintiff reported that he was "doing okay" with his medications and that they were working for his pain. Plaintiff also reported some intense neck pain. (Tr. 838). Plaintiff's medications were refilled as he was stable and functioning.  (Tr. 841).

On October 30, 2017, Plaintiff saw Dr. Anthony Meloy at Ozark Guidance Center. Plaintiff reported undergoing individual therapy with Ms. Olson, but also stated that he had

not seen her in a "few months" secondary to moving and being in jail for several weeks. Plaintiff also reported missing his last appointment with Dr. Salvador and that he was out of medications.  He stated that his symptoms were worse since being off his medications. (Tr. 775). Plaintiff's gait was normal. He was casually groomed, cooperative, clear speech, logical thought process, and intact associations.  (Tr. 778).

On November 3, 2017, Plaintiff had another ninety-day review at Ozark Guidance Center. (Tr. 780). Notes indicate that Plaintiff would begin treatment at the Siloam Springs office and that he had not attended therapy during the ninety-day review period. (Tr. 783). Moreover, Plaintiff was out of his medications, had not taken them as prescribed, and had not attended medical appointments. (Tr. 783).

On December 4, 2017, Plaintiff returned to Dr. Thurman where he reported that he was doing well, that he was busy moving to Fayetteville, and that he was worn out from the moving process. (Tr. 852). He reported that his medications were working well, but that he also had some pain from degenerative disc disease.  Dr. Thurman noted that Plaintiff was stable and functioning and that he was "just doing light duty right now."  Plaintiff reported that he has hip pain with changes in the weather and that doctors wanted to do a hip replacement on him. (Tr. 852). Plaintiff's physical examination was normal with the exception of his gait where Dr. Thurman noted that he was unable to stand without difficulty. (Tr. 854). His diagnosis included the following: chronic pain, hip pain, osteoarthritis of the pelvic and hip region.   (Tr. 855).

On December 21, 2017, Plaintiff saw Ms. Olson for individual therapy. (Tr. 788). Plaintiff was cooperative with a full affect and euthymic mood.  (Tr. 789). Plaintiff reported having been homeless for a while and that he was moving back to the Fayetteville area.  (Tr.

790). Plaintiff stated that he agreed to continued treatment at the Siloam Springs location. (Tr. 790). Plaintiff's prognosis was fair. (Tr. 790).

On December 22, 2017, Plaintiff returned to Dr. Salvador.  Plaintiff's psychiatric examination showed that he was casually groomed, had clear speech, a logical thought process, a full affect, and a depressed/anxious mood.  Plaintiff rated his depression at a 3-4/10 that day. (Tr. 796). Plaintiff's judgment and insight were impaired, his attention distractible, his strength average, and his gait normal. (Tr. 796). Post-traumatic stress disorder was offered as a new diagnosis. (Tr. 797).

On January 3, 2018, Plaintiff arrived at Northwest Medical Center emergency department with complaints of anxiety, depression, and pain. (Tr. 985). Plaintiff told emergency personnel that he had been out of his pain medication for the past four days because it had been stolen, and the pain had triggered his depression and anxiety. (Tr. 985, 987). Plaintiff reported that he had an upcoming appointment with his pain management doctor in the next few days. (Tr. 995). Plaintiff was assessed with chronic leg pain. (Tr. 998).

On January 31, 2018, Plaintiff saw Sean Millhouse, LPC, for a standard nineth-day review. (Tr. 799). Mr. Millhouse documented that Plaintiff had attended one individual therapy session and one medical management appointment in the last ninety days with two cancelations.  Plaintiff reported an increase in his symptoms.  Notes indicate that Plaintiff's progress was limited due to poor consistency in his treatment with missed appointments.  (Tr. 802).  However, Plaintiff was engaged and in agreement to continue treatment recommendations as prescribed.  (Tr. 803).

12

On February 8, 2018, Plaintiff was seen at the emergency department of Northwest Medical Center for fever, congestion, and body aches. (Tr. 973). Hospital records indicate Plaintiff was a smoker. (Tr. 974). Plaintiff was diagnosed with acute maxillary sinusitis and discharged. (Tr. 975).

On March 6, 2018, Plaintiff returned to Dr. Thurman where he reported that his medications were helping his pain, that he was stable and functioning, that he had no side effects from his medications, and that he was able to do activities of daily living and other activities. (Tr. 867). Plaintiff's physical examination showed some tenderness and a decrease in range of motion of the left extremities. (Tr. 869). He also had an abnormal gait. His diagnosis included chronic pain, hip pain, and osteoarthritis of the pelvic and thigh region. No changes were made to his medication regimen as he was stable and functioning well. (Tr. 870).

Also, on March 6, 2018, Dr. Salvador completed a Treating Source Mental RFC Assessment wherein she included a diagnosis of post-traumatic stress disorder. (Tr. 1135). Dr. Salvador indicated that Plaintiff had either poor or markedly limited ability in the majority of the listed areas on the form from September 4, 2010, through the present. Dr. Salvador also indicated by checking a box that the limitations were based upon clinical observations, signs and symptoms; objective findings and/or testing; and patient history. (Tr. 1135).

On March 9, 2018, Plaintiff participated in individual therapy with Ms. Olson at Ozark Guidance Center. (Tr. 1136). Plaintiff's examination showed he was cooperative, with a depressed mood and full affect. Plaintiff's prognosis was guarded. (Tr. 1137). Plaintiff reported nightmares and a recent incident where he was verbally abusive to his wife as he was waking up from a nightmare. Plaintiff was tearful and regretful for hurting his wife. (Tr. 1138).

On April 5, 2018, Plaintiff saw Dr. Salvador. Plaintiff's physical examination showed that he was cooperative, had clear speech, had logical thought process, had depressed mood, had impaired judgment and insight, had average strength, and had a normal gait. (Tr. 1144). Plaintiff was agreeable to continued treatment.  (Tt. 1145).

## III.     Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable

14

by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(C). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. § 416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her RFC. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 416.920.

**IV.    Discussion:**

Plaintiff makes the following arguments on appeal: 1) that the ALJ erred in failing to fully and fairly develop the record; 2) that the ALJ erred at step two of the sequential analysis; 3) that the ALJ erred in assessing the credibility of Plaintiff's subjective complaints; and 4) that the ALJ erred in his RFC Assessment which was not supported by either examining or treating source opinion evidence. (Doc. 12, pp. 1-12).

### A.    Full and Fair Development of the Record:

Plaintiff asserts that the ALJ erred in failing to order a consultative examination as requested by Plaintiff.[3] (Doc. 12, pp. 2-6).

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995). The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press his case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). The ALJ, however, is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. "Reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995). The duty to develop the record extends only to ordering additional medical examinations and tests if the medical records presented do not provide enough information to determine whether the claimant is disabled. Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).

In this case, there were adequate medical records for the ALJ to make an RFC determination. The ALJ's RFC finding was supported by treating source opinions, imaging of Plaintiff's spine and hip, and non-examining medical expert opinions. As discussed further below, the ALJ considered Plaintiff's treatment records, Plaintiff's own reports as to the effects of his impairments on his ability to work, and the opinions of treating and non-examining medical consultants.

After reviewing the entire record, the Court finds the record before the ALJ contained the evidence required to make a full and informed decision regarding Plaintiff's capabilities

---

[3] The Court notes that additional arguments made by Plaintiff will be addressed below.

during the relevant time period.  Accordingly, the undersigned finds the ALJ fully and fairly developed the record.

### B.    Plaintiff's Impairments:

Plaintiff argues that the ALJ should have found additional impairments, including Plaintiff's hip pain, generalized anxiety disorder, post-traumatic stress disorder, and other musculoskeletal/spine impairments, severe, as well. (Doc. 13, pp. 5-6).

At Step Two of the sequential analysis, the ALJ is required to determine whether a claimant's impairments are severe. See 20 C.F.R. § 404.1520(c). While "severity is not an onerous requirement for the claimant to meet ... it is also not a toothless standard." Wright v. Colvin, 789 F.3d 847, 855 (8th Cir. 2015) (citations omitted). To be severe, an impairment only needs to have more than a minimal impact on a claimant's ability to perform work-related activities. See Social Security Ruling 96-3p. The claimant has the burden of proof of showing he suffers from a medically-severe impairment at Step Two. See Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir. 2000).

In determining Plaintiff's severe impairments, the ALJ noted the record showed Plaintiff had received treatment for hip pain since an injury in 2010. The ALJ pointed out that an orthopedist examined Plaintiff in 2017 where Plaintiff reported that his pain had improved over the last few months. He also reported that cold weather and long car rides bothered him. His examination showed no pain with internal or external rotation, good lower extremity strength, and decent range of motion in the hip, with mild tenderness to palpation at the most superior incision which was well healed. Plaintiff was informed that because the hip joint itself looked good, he was not a candidate for surgery and his only option was hardware removal, which after hearing that some pain and discomfort would always be present with his injury,

Plaintiff declined. Furthermore, the ALJ noted that Plaintiff often reported that his medication was controlling his pain and keeping him functioning, and he did not have side effects. The ALJ also noted that Plaintiff's neck pain was treated with medication and injections and that Plaintiff reported up to a ninety percent improvement in his pain. The record showed that in 2016, Plaintiff was active, working on weekends, and at one point, he fell off of a ladder. A physical examination showed a normal range of motion in his cervical spine and nontender paraspinal muscles with a negative Spurling's test. At times, Plaintiff's gait was abnormal with difficulty standing, and other times it was normal.

As for Plaintiff's assertions regarding post-traumatic stress disorder and anxiety, the ALJ pointed out that Plaintiff's medication and counseling helped to control his symptoms; however, Plaintiff was inconsistent with his medication and counseling and was discharged from counseling for missed appointments and failing to take medication as prescribed. The ALJ noted that Plaintiff's mental status examinations often showed that his memory, concentration, energy, and motivation were fair, average, or good, and that Plaintiff's personal issues with domestic disputes and correlating legal claims were citing by Plaintiff as circumstantial stressors. A review of the record also reveals that Plaintiff admitted to light work, engaging in heavy lifting, and climbing on ladders during the relevant time period. After reviewing the record, the Court finds substantial evidence to support the ALJ's determination that Plaintiff's hip, neck, anxiety, and PTSD were not severe impairments.

The Court further notes that while the ALJ did not find all of Plaintiff's alleged impairments to be severe impairments, the ALJ specifically discussed the alleged impairments in the decision, and clearly stated that he considered all of Plaintiff's impairments, including the impairments that were found to be non-severe. See Swartz v. Barnhart, 188 F. App'x 361,

368 (6th Cir. 2006) (where ALJ finds at least one "severe" impairment and proceeds to assess claimant's RFC based on all alleged impairments, any error in failing to identify particular impairment as "severe" at step two is harmless); Elmore v. Astrue, 2012 WL 1085487 *12 (E.D. Mo. March 5, 2012);see also 20 C.F.R. § 416.945(a)(2) (in assessing RFC, ALJ must consider "all of [a claimant's] medically determinable impairments ..., including ... impairments that are not 'severe' "); § 416.923 (ALJ must "consider the combined effect of all [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity").

With regard to Plaintiff's argument that the ALJ erred in performing his Psychiatric Review Technique, after a thorough review of the record, the Court finds this argument to be without merit.

Based upon a review of the record, the Court finds that the ALJ did not err in setting forth Plaintiff's severe impairments during the relevant time period.

### C.    Listing of Impairments:

Plaintiff argues that the ALJ erred by failing to determine that Plaintiff's impairments met or equaled Listings 12.15, 12.06, 1.02, and 1.04 of the Listing of Impairments pursuant to 20 CFR Part 404, Subpart P, Appendix 1.

The burden of proof is on the Plaintiff to establish that her impairments meet or equal a listing. See Sullivan v. Zebley, 493 U.S. 521, 530-31, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). To meet a listing, an impairment must meet all of the listing's specified criteria. Id. at 530, 110 S.Ct. 885 ("An impairment that manifests only some of these criteria, no matter how severely, does not qualify."); Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004). "Medical equivalence must be based on medical findings." 20 C.F.R. § 416.926(b) (2003); Sullivan, 493

U.S. at 531 ("a claimant ... must present medical findings equal in severity to all the criteria for the one most similar listed impairment"). In this case, the ALJ explicitly found Plaintiff's impairments considered singly and in combination, did not meet or medically equal the criteria described in any of the impairments contained in the Listing of Impairments.

The Court notes that the ALJ did not explicitly address Listings 12.15, 12.06, 1.02, and 1.04 in the administrative decision; however, after reviewing the entire evidence of record, the Court finds there is sufficient evidence to support the ALJ's determination that Plaintiff's impairments did not medically equal a Listing.

### D.    Subjective Complaints and Symptom Analysis:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards, 314 F.3d at 966.

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. In addressing Plaintiff's credibility, the ALJ noted Plaintiff's testimony that he had neck, left leg issues and hip pain after an injury he suffered while incarcerated, all of which prevented him from working. (Tr. 43). Plaintiff also stated that he suffered from chronic pain, PTSD (nightmares),

20

anxiety (trouble being around work around others) and depression. (Tr. 43). Plaintiff stated that he took oxycontin, gabapentin, ibuprofen, and mental health medication, which had improved his symptoms. He stated that he did not have any real side effects from the medication and that the medication had him "pretty much balanced out." (Tr. 45). While he had been told that he would have chronic pain all of his life, he was careful with regard to his activities and tried to exercise a little as well. (Tr. 45). Plaintiff stated that the pain impacted his sleep and required him to rotate when sitting, standing, and lying down. (Tr. 46).

In a Function Report dated December 10, 2016, completed by his sister, Jenna Christians, she stated that Plaintiff lived with her and was able to do daily activities and errands. (Tr. 241). Plaintiff could care for himself with the exception of trouble bending over to tie shoes and put on pants. (Tr. 243). Plaintiff did not need reminders; could prepare simple meals; and could do laundry, dishes and clean his room. Ms. Christians reported that Plaintiff went outside daily; could go out alone; could use a scooter; could ride in a car for short distances; could shop in stores for food; could count change, but otherwise did not have funds to manage. (Tr. 243-246).  Plaintiff enjoyed watching television, reading, being on the internet, talking on the phone, and spending time on Facebook. (Tr. 246-247). Plaintiff did not have trouble getting along with others but had become less social due to his mental health issues. (Tr. 247).  Ms. Christians stated that Plaintiff could walk a quarter of a mile; could pay attention at times; could finish what he started; and could follow written and spoken instructions well. (Tr. 248). Lastly, Ms. Christians reported that Plaintiff had nightmares from his previous injury, used a cane, and did not have any side effects from his medications.

With respect to Plaintiff's physical impairments, the record indicated that Plaintiff was treated conservatively with medication, injections, and physical therapy for his neck pain and

his hip and leg pain. See Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir.1992) (course of conservative treatment contradicted claims of disabling pain). Furthermore, the medical records also show that Plaintiff reported on numerous occasions that his symptoms were improved with medication and other forms of conservative treatment. We note, an impairment which can be controlled by treatment or medication is not considered disabling. See Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir.2002) (citations omitted).

With respect to Plaintiff's mental impairments, the record demonstrates that Plaintiff was treated conservatively with medication and individual therapy. The medical records also show that Plaintiff's medication and therapy were helpful at times and that his mental health conditions improved somewhat with treatment. However, medical records also showed that Plaintiff was non-compliant at times, would regress when he stopped taking his prescription medication on his own, and would regress when he was "sporadic" in his attendance for counseling sessions. See Brown v. Barnhart, 390 F.3d 535, 540-541 (8th Cir. 2004) (citations omitted) ("Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits."); Ostronski v. Chater, 94 F.3d 413, 419 (8th Cir. 1996) (complaints of disabling pain and functional limitations are inconsistent with the failure to take prescription pain medication or to seek regular medical treatment for symptoms).

Upon discrediting Plaintiff's allegation that he is disabled, ALJ further considered Plaintiff's treatment records that alluded to activities including working, falling off of a ladder, and heavy lifting of items while moving. "Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." Branson v. Astrue, 678 F. Supp. 2d 947, 960 (E.D. Mo. 2010) (citing Johnson v. Apfel, 240 F.3d 1145, 1148-49 (8th Cir. 2001)). "Working generally demonstrates an ability to perform a substantial gainful

activity." Branson v. Astrue, 678 F. Supp. 2d 947, 960 (E.D. Mo. 2010) (citing Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir. 2005)). Section 404.1574(a) provides that if a claimant has worked, the Commissioner should take this into consideration when determining if the claimant is able to engage in substantial gainful activity.

Although it is clear that Plaintiff suffers some degree of limitation, he has not established that he is unable to engage in any gainful activity. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

### E.     ALJ's RFC Determination:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect h[er] RFC." Id.

In the present case, when determining that Plaintiff could perform unskilled work, the ALJ considered the relevant medical records, the medical opinions from treating and non-examining physicians, and set forth the reasons for the weight given to the opinions. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians")(citations omitted); Prosch v. Apfel, 201 F.3d 1010 at 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole).

Plaintiff asserts that the ALJ failed to give proper weight to Dr. Salvador's Treating Mental RFC Assessment, wherein Dr. Salvador indicated that Plaintiff had either poor or markedly limited ability in the majority of the listed areas on the form during the period of September 4, 2010, through the present, and where she included a diagnosis of post-traumatic stress disorder. (Tr. 1135). The Treating Mental RFC Assessment submitted by Dr. Salvador was a checkbox form. The Eighth Circuit has stated that a conclusory checkbox form has little evidentiary value. See Anderson v. Astrue, 696 F.3d 790 (8th Cir. 2012); Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010); Holmstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001) (checklist format, generality, and incompleteness of treating physician's assessments limited their evidentiary value); see also Mason v. Shalala, 994 F.2d 1058, 1065 (3rd Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."). A treating physician's checkmarks on an MSS form are conclusory opinions that may be discounted if contradicted by other objective medical evidence in the record. See Martise v. Astrue, 641 F.3d 909, 926 (8th Cir. 2011) (citing Stormo v. Barnhart, 377 F.3d 801, 805-06 (8th Cir. 2004)). The ALJ considered Dr. Salvador's opinion and gave

it less weight because it was not supported by the treatment notes.  The Court finds that the ALJ declined to give controlling weight to Dr. Salvador's opinion for good and well-supported reasons. See Goff v. Barnhart, 421 F.3d 785, 790–91 (8th Cir. 2005) ("[A]n appropriate finding of inconsistency with other evidence alone is sufficient to discount [the treating physician's] opinion.").

The ALJ also gave great weight to the non-examining medical consultants' opinions. Dr. Kelly and Dr. Kogut completed a Psychiatric Review Technique and Mental RFC Assessments on February 15, 2017, and May 12, 2017, where both doctors determined that Plaintiff was capable of unskilled work. (Tr. 70, 75, 89, 95).  Moreover, Dr. Friedman and Dr. Allbright performed Physical RFC Assessments on March 9, 2017, and May 25, 2017, where they determined that Plaintiff was able to perform light work with occasional climbing, balancing, stooping, kneeling, crouching, and crawling. (Tr. 73, 92). In deciding whether a claimant is disabled, the ALJ considers medical opinions along with "the rest of the relevant evidence" in the record. 20 C.F.R. § 416.927(b). "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole." Wagner v. Astrue, 499 F.3d 842, 848 (8th Cir. 2007), citing Pearsall v. Massanari, 274 F.3d 1211, 1219 (8th Cir. 2001) (internal citations omitted).

In the present case, the ALJ considered all of the medical records when determining that Plaintiff retained the RFC to perform light work with limitations. Plaintiff's capacity to perform this level of work is supported by the fact that Plaintiff's examining physicians placed no physical restrictions on his activities as a result of his hip and neck pain that would preclude

performing the RFC determined. See Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability). In addition, the record reflects that Plaintiff was able to engage in strenuous activities, such as moving and lifting heavy items and boxes and climbing ladders.  The ability to perform such activities supports an RFC for at a minimum, light exertional work.

With regard to a third-party statement completed by Plaintiff's sister, the ALJ properly considered this evidence but found it unpersuasive. This determination was within the ALJ's province. See Siemers v. Shalala, 47 F.3d 299, 302 (8th Cir. 1995); Ownbey v. Shalala, 5 F.3d 342, 345 (8th Cir. 1993).

Upon careful review of the record as a whole, the Court finds that Plaintiff's arguments are without merit and that substantial evidence supports the ALJ's RFC determination.

**F.     Hypothetical Question to the Vocational Expert:**

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).  Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing work as a can filling closing machine tender, a power screw driver operator, and a compression molding machine tender.  (Tr. 28).  Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996) (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**V.    Conclusion:**

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 23rd day of July, 2020.


/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE